Brian KUSZEWSKI, a minor, by his parents, Richard Kuszewski and Cindy Kuszewski, Plaintiff–Appellant,

v.

CHIPPEWA VALLEY SCHOOL DISTRICT, Defendant–Appellee.

No. 01–1339.

United States Court of Appeals, Sixth Circuit.

Jan. 13, 2003.

Before BOGGS and COLE, Circuit
Judges; and BELL, District Judge.*

## OPINION

COLE, Circuit Judge.

The parents of a disabled boy brought
this action under the Individuals with Dis-
abilities Education Act ("IDEA" or the
"Act"), 20 U.S.C. § 1400 *et seq.,* and the
Michigan Handicapper Civil Rights Act
("MHCRA"), Mich. Comp. Laws. Ann.
§ 37.1101 *et seq.,* against the Chippewa
Valley School District. Richard and Cindy
Kuszewski sought reimbursement for at-
torneys' fees and the costs of placing their
son, Brian, in private school after they
withdrew him from Chippewa Valley public
schools. The district court affirmed the
findings of the state hearing review officer
("SHRO") and denied the request for re-
imbursement and attorneys' fees. The
Kuszewskis appeal, arguing that the school
district denied Brian the free appropriate
public education ("FAPE") to which he
was entitled under the Act. For the rea-
sons that follow, we **AFFIRM** the judg-
ment of the district court.

## I. Background

Brian Kuszewski is a "child with a dis-
ability" within the meaning of the IDEA.
*See* 20 U.S.C. § 1400 *et seq.* As such, the
IDEA requires the Chippewa Valley
School District ("the School District") to
provide Brian with a FAPE. *See* 20 U.S.C.
§ 1412(a)(1)(A). In order to provide a
FAPE, the IDEA requires that school sys-
tems have in effect at the beginning of

each school year an individualized edu-
cation program ("IEP") for each child cov-
ered by the Act. *See* 20 U.S.C.
§ 1414(d)(2)(A). Brian was a student in
the School District until August 25, 1999,
when his parents withdrew him and placed
him in a private school. At the time Brian
was removed, the Kuszewskis and the
School District were in the midst of admin-
istrative proceedings to determine the ade-
quacy of Brian's IEP. When the School
District informed the local hearing officer
("LHO") that the Kuszewskis had unilater-
ally removed Brian to a private school, the
School District filed a motion to dismiss
the administrative appeal as moot. On
September 1, 1999, the LHO granted this
motion. The Kuszewskis then appealed
that decision to a state level hearing.

After the appointment of the SHRO, the
School District filed a motion to dismiss
the appeal on two grounds. First, it ar-
gued that the appeal was untimely. Sec-
ond, it argued that the appeal should be
dismissed as moot. The SHRO granted
the motion on both grounds. The Kusz-
ewskis sought review of this decision in the
district court.

On October 17, 2000, the district court
found that the Kuszewskis' appeal was
timely filed. *Kuszewski v. Chippewa Val-
ley Schools,* 117 F.Supp.2d 646, 649
(E.D.Mich.2000). The court also found
that, due to the unilateral withdrawal of
Brian from the School District, the issues
surrounding the adequacy of the IEP were
moot. However, the court held that the
inquiry into whether the Kuszewskis were
entitled to reimbursement for attorneys'
fees and private educational expenses was
not moot. *Id.* The court noted that in
order to obtain reimbursement for past

---

* The Honorable Robert Holmes Bell, Chief
United States District Judge for the Eastern

District of Michigan, sitting by designation.

educational costs, the Kuszewskis would have to show that the School District denied Brian a FAPE. *Id.* at 650. Finding that the state level hearings made no determination on this issue, the district court remanded the case to a local level hearing for such a determination. *Id.*

This ruling, however, was incorrect. The SHRO did indeed determine that Brian had received a FAPE. Recognizing its error, the district court rescinded its order remanding the case to the state administrative agencies to make that determination. As such, the appeal of whether Brian had received a FAPE was properly before the district court.

The district court found that, while the LHO had in fact erred by dismissing the case as moot, the complete review by the SHRO fully cured that error. In addition, the court found that the School District did not violate the IDEA by failing to update Brian's IEP on an annual basis. According to the IDEA, once an appeal or civil litigation has commenced, the IEP in place at that time is to operate as the IEP until the conclusion of the appeal or litigation process. *See* 20 U.S.C. § 1415(j). Thus, the school was essentially required to maintain the then-current IEP in order to comply with this "stay-put" provision of the IDEA. In short, the court found that all the requirements of the IDEA were met. The court held that the IEP was reasonably calculated to enable Brian to receive educational benefits. *See Burlovich v. Bd. of Educ. of Lincoln Consol. Sch.,* 208 F.3d 560, 565 (6th Cir.2000). Further, the court found that, even evaluating the case under the higher Michigan standard of "maximum potential," Brian

also received a FAPE. Mich. Comp. Laws §§ 380.1701(a), 380.1711(a), 380.1751(1).[1]

The district court saw no need for additional testimony. Because the court found that Brian received a FAPE, it held that the Kuszewskis were not entitled to recover private educational costs. *See* 20 U.S.C. § 1412(a)(10)(C)(ii). Additionally, the court held that the Kuszewskis could not recover attorneys' fees, because these fees may only be awarded to the prevailing party. *See* 20 U.S.C. § 1415(i)(3)(B). The Kuszewskis now appeal to this Court.

## II. Discussion

### A. Standard of Review

The court initially reviewing a state administrative decision should make independent findings of fact based on the preponderance of the evidence, but also should give due weight to the findings in the administrative review. *Knable v. Bexley City Sch. Dist.,* 238 F.3d 755, 764 (6th Cir.2001). While district courts should not blindly adopt the state administrative findings without a re-examination of the evidence, *Doe v. Metro. Nashville Pub. Sch.,* 133 F.3d 384, 387 (6th Cir.1998), they should likewise refrain from substituting their own notions of sound educational policy for the judgment of school authorities. *Doe v. Bd. of Educ. of Tullahoma City Sch.,* 9 F.3d 455, 458 (6th Cir.1993). "According to this 'modified' *de novo* standard of review, a district court is required to make findings of fact based upon a preponderance of the evidence contained in the complete record, while giving some deference to the fact findings of the administra-

---

**1.** Michigan state law requires that school systems provide "special education programs and services designed to develop the maximum potential of every handicapped person." MCL § 380.1701(a). "This means not only refraining from excluding, expelling, limiting, or otherwise discriminating against handicapped students, but also affirmatively providing them with special programs and services designed to maximize their potential." *Jenkins v. Carney–Nadeau Pub. Sch.,* 201 Mich. App. 142, 145, 505 N.W.2d 893 (1993).

tive proceedings." *Knable*, 238 F.3d at 764.

This Court applies a clearly erroneous standard of review to the district court's findings of fact, and reviews its conclusions of law *de novo*. *Id.*

## B.  Analysis

From the argument of the appellants, we are able to distill two fundamental claims brought before us on this appeal. The first issue is whether Brian received a FAPE, which, in turn, dictates whether the Kuszewskis are to be awarded private placement expenses and attorneys' fees. The second issue is whether the improperly truncated local administrative hearing contains a record sufficiently developed to allow for later stages of appeal to be appropriate.  The Kuszewskis contend that the incompleteness of the original hearing renders the record inadequate for review by the SHRO, the district court, and this Court.

### 1.  Adequacy of the IEP

"[P]arents who unilaterally change their child's placement during the pendency of review proceedings, without the consent of state or local school officials, do so at their own financial risk." *Sch. Comm. of Burlington, Mass. v. Dep't of Educ.*, 471 U.S. 359, 373–74, 105 S.Ct. 1996, 85 L.Ed.2d 385 (1985); *see also Knable*, 238 F.3d at 763; *Wise v. Ohio Dep't of Educ.*, 80 F.3d 177, 184 (6th Cir.1996).  This does not mean, however, that parents who unilaterally remove their children cannot recover the costs of the private placement.  *Knable*, 238 F.3d at 763.  Parents are entitled to retroactive reimbursement if the public placement violated the IDEA and the private placement was proper.  *See id.* (citing *Florence County Sch. Dist. Four v. Carter*, 510 U.S. 7, 15, 114 S.Ct. 361, 126 L.Ed.2d 284 (1993)).

■ Because unilateral removal does not foreclose the possibility of recovery for private educational costs, as well as the attorneys' fees incurred in attempting to so recover, the administrative review officers did in fact err, as the district court stated, in finding that the removal rendered further proceedings moot.  An assessment of the adequacy of the IEP and the propriety of the private placement was still required in order to render a decision as to whether the parents could recover these costs.

■ Two independent reviewing authorities, the SHRO and the district court, have now assessed the adequacy of the IEP and determined that the School District provided Brian with a FAPE. After conducting our own assessment of the record, we agree.

An IEP should include, among other things, (1) a statement of the child's present levels of educational performance;  (2) measurable annual goals;  (3) a statement of the special education services to be provided to the child;  (4) an explanation of the extent to which the child will not participate with nondisabled children;  (5) a statement of any individual modifications of state or districtwide achievement assessments necessary for the child to participate in such assessments;  (6) the projected date for the commencement of the IEP and the anticipated frequency of the services and modifications;  (7) if the child has reached age 14, an annually updated statement of the transition services necessary for the child to be able to continue in the appropriate course of study;  and (8) a statement of how the child's progress will be measured and how the child's parents will be regularly informed.  *See* 20 U.S.C. § 1414(d)(1)(A).

The Kuszewskis challenge the adequacy of the IEP because it has not been annual-

ly updated during this litigation. However-er, as noted above, according to the IDEA, once litigation has commenced, the IEP in place at that time is to operate as the IEP until the conclusion of the litigation. *See* 20 U.S.C. § 1415(j). There is no merit to the argument that the school's compliance with the stay-put provision of the IDEA caused Brian's IEP to be inadequate.

The Kuszewskis also allege that Brian was denied a FAPE because the communi-cation between the school and the family was insufficient. The record indicates that there was substantial communication be-tween the school and the Kuszewskis. Moreover, the IDEA only requires schools to inform the parents of the child's prog-ress at least as often as parents of nondis-abled children are informed of their chil-dren's progress. 34 C.F.R. § 300.347(a)(7)(ii). Surely, the amount of contact between the school and Brian's parents far exceeded the amount of com-munication between the school and the parents of nondisabled children. The IDEA does not require schools to commu-nicate with the parents of disabled children as frequently as the parents wish.

In addition, Brian's IEP, contrary to the claim of his parents, clearly provides meas-urable goals and objectives. For instance, the IEP states, among other objectives, that Brian will recall four story events in sequence after a reading, that Brian will use appropriate punctuation and capitaliza-tion in sentences, and that Brian will make correct change up to $1.00. All of these are concrete examples of the measurable objectives Brian's parents claim the IEP lacks.

Upon considered review of this case, and recognizing the appropriate deference to be given to the judgment of school authori-ties, we find that the IEP substantially satisfies the requirements of the IDEA, as well as the heightened "maximum poten-tial" standard of the MHCRA, and pro-vides a FAPE. *See Knable,* 238 F.3d at 769.

2. *Adequacy of the record in light of the administrative hearing's prema-ture termination*

■ The appellants contend that they suffered prejudice as a result of the wrongful dismissal on mootness grounds. They claim that they were denied due process because the LHO dismissed the hearing as moot when they announced their decision to remove Brian from the School District. The district court found that, while the decision to dismiss the ap-peal as moot was an error, there was no injury to the plaintiffs because the SHRO's full review cured any defect caused by the improper dismissal. Despite the fact that the SHRO incorrectly affirmed the deci-sion of the LHO to dismiss the case as moot, the SHRO nevertheless addressed the substantive issues raised by the plain-tiffs. The Kuszewskis argue that the SHRO, the district court, and this Court are all unable to properly address the question of whether Brian was receiving a FAPE because the LHO incorrectly dis-missed the case as moot when the Kusz-ewskis removed Brian from his public school. The Kuszewskis argue that the SHRO erred in denying them the right to have witnesses testify when affirming the decision of the LHO. Because the initial proceedings were abbreviated, the appel-lants claim that the record is incomplete and meaningful review is therefore impos-sible. Thus, rather than rendering our own decision on the adequacy of the IEP, the Kuszewskis urge us to remand the case for further proceedings wherein they would have the opportunity to present their case in full.

A claim by a party that it was denied due process and unable to present its case in full is a serious claim, and one which we should not dismiss lightly. It is the bur-den of the parents to demonstrate by a

preponderance of the evidence that the IEP in question is inadequate. *Renner v. Bd. of Educ. of the Pub. Sch. of Ann Arbor*, 185 F.3d 635, 642 (6th Cir.1999). Of course, the Kuszewskis contend that they were not given the opportunity to meet this burden because the LHO cut short their hearing. However, while we have stated that the dismissal by the LHO was indeed an error, there is nothing to indicate that the error was prejudicial to the Kuszewskis. The LHO did conduct six days of hearings on this matter, and, from that record, the SHRO possessed sufficient information to address the adequacy of the IEP. Bearing the burden in this case, it was incumbent upon the plaintiffs to offer proof as to the nature of the evidence that they claim was improperly excluded. The appellants argue that we are incapable of determining the adequacy of Brian's IEP because the record is missing the evidence that they would have presented had the original administrative proceeding been permitted to continue. Appellants did not, however, submit affidavits or other evidence of any sort that might help this Court, or the district court, determine the nature or importance of the allegedly missing evidence, be it in the form of documentation or witness testimony. This Court must inquire not only into whether there was a procedural violation, but also whether that violation caused substantive harm to Brian or his parents. *See Metro. Bd. of Pub. Educ. v. Guest*, 193 F.3d 457, 464 (6th Cir.1999). Without the proffer of any such evidence by the appellants, we cannot find that they were materially harmed by the abridgement of the hearing.

### III. Conclusion

For the foregoing reasons, we **AFFIRM** the judgment of the district court.