Adam **BARNETT**, Plaintiff–Appellant,

v.

**MEMPHIS CITY SCHOOL SYSTEM,**
Defendant–Appellee.

No. 00–2359 D/V.

United States District Court,
W.D. Tennessee,
Western Division.

Dec. 4, 2003.

---

Rebecca Adelman, Law and Mediation Office of Rebecca Adelman, Memphis, TN, Suzanne Michelle, Law Office of Suzanne Michelle, Nashville, TN, for plaintiff.

Ernest G. Kelly, Jr., Michael R. Marshall, Stokes Bartholomew Evans & Petree, P.A., Memphis, TN, for defendant.

Bill Ward, Tennessee Department of Education, Of Special Education, Nashville, TN, for misc.

### ORDER

DONALD, District Judge.

Before the Court is the issue of whether Adam Barnett's ("Plaintiff" or "Adam") claims under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 et seq., are moot. The discrete issue of mootness is on remand from the Sixth Circuit. *Barnett v. Memphis City Schools,* 50 Fed.Appx. 219, 220 (6th Cir. 2002). Memphis City School System ("Memphis School System" or "Defendant") argues that Adam's claims are moot because he obtained a special education diploma and has no viable prayers for relief against Memphis School System. Plaintiff argues that his prayers for a compensatory education and concurrent services are not moot. For the reasons stated herein, the Court holds that Plaintiff's claims are not moot.

### I. Background Facts

At the time of this review, Adam Barnett is a twenty-four year old vocational student with a disability. Adam was born prematurely with cerebral palsy, no hands, and only one foot. (Tr. 31.) Adam requires assistance in accomplishing the basic daily activities, including eating, dressing, and bathing. (Tr. 32.)

Adam attended the Shrine School from age six to age twenty-one. (Tr. 32–33, Reese Aff.) The Shrine School is a public school in Memphis School System, which has classes for students with disabilities. In February 1999, Adam sustained injuries when attendants in charge of his care at the Shrine School dropped him while removing him from a wheelchair. Due to the injury, Adam and his parents retained counsel and filed a personal injury suit in state court. The parties reached a settlement in that case.

Through discovery in the state case, Adam's parents received Adam's full school record, including educational and psychological evaluations of which they were previously unaware. (Tr. 37.) In light of Adam's full record, Adam's parents became convinced that his previous and current IEPs were not appropriate. Therefore, they requested that the Shrine School reevaluate Adam in the Spring of

1999, so the IEP Team could create a new IEP by the beginning of the 1999–2000 school year. At the May 12, 1999 IEP Team meeting, the IEP Team agreed that Memphis School System would conduct ten assessments of Adam in various areas. (ALJ's Final Order at 4.) The parties disagreed as to when the evaluations were to occur, so under the advice of counsel, Plaintiff's parents paid to have some of the evaluations conducted without the aid of Memphis School System. (Tr. 71.)

After frustration with Memphis School System, Adam, through and by his parents, filed a formal request for a fair and impartial hearing before a state-appointed administrative law judge on August 26, 1999. (Tr. 5.) Plaintiff's claim asserted that Memphis School System failed to provide Adam with a FAPE as required under the IDEA. To provide a FAPE, a school system must develop an "individualized educational program" ("IEP") tailored to meet each disabled student's unique needs. *Bd. of Educ. v. Rowley*, 458 U.S. 176, 181, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982).

On February 29, 2000, the administrative law judge ("ALJ") found in favor of Memphis School System. Among other determinations, the ALJ determined that Adam and his parents failed to provide Memphis School System a reasonable opportunity to proceed with the evaluations recommended at the May 12, 1999 IEP Team meeting. The ALJ held that a period of six weeks in the summer when school was not in session and when a valid IEP was in place for the fall term, did not constitute a violation of any timeline under the IDEA. (ALJ's Final Order at 6.) The ALJ found the testimony of the school's transition plan expert credible and decided that the transition plan developed for Adam was appropriate. (ALJ's Final Order at 4.) After hearing all of the testimony, the ALJ decided that Memphis School

System provided Plaintiff with a FAPE in accordance with the provisions of the IDEA.

In response, Adam's parents filed a complaint in United States District Court, Western District of Tennessee on April 26, 2000 challenging the ALJ's decision. On December 1, 2001, the Court affirmed the final order of the ALJ on appeal. The Court concluded that Memphis School System committed procedural violations of the IDEA by failing to relay the information contained in Adam's 1995 psychological evaluation and 1998 vocational rehabilitation assessment to Adam's parents. (Order Aff. Final Order of ALJ at 19–21.) Under a preponderance of the evidence standard, the Court concluded that the evidence would not preclude the ALJ's decision that Adam substantively received a FAPE. (*Id.* at 25.) Therefore, despite Memphis School System's procedural violations, the Court affirmed the decision of the ALJ and denied Petitioner's claim for compensatory education. (*Id.*)

In the Spring of 2000, Adam graduated from the Shrine School with a special education diploma. (Reese Aff.)

After receiving the adverse judgment, Plaintiff appealed to the Sixth Circuit. On October 30, 2002, the Sixth Circuit remanded the case, stating:

> After carefully reviewing the parties' briefs and the record, and after considering the additional claims made at oral argument, we conclude that we are not in a position to determine whether the case is moot. We must therefore remand the case to the district court, with instructions that, pursuant to 20 U.S.C. § 1415(i)(2)—which broadly provides that a district court may hear additional evidence if so requested—that court consider whatever additional evidence is necessary to determine, both factually and legally, whether the school district

is correct in its assertion at oral argument that Adam's removal from the Memphis City Schools moots this case. *Barnett*, 50 Fed.Appx. at 220.

On November 20, 2003, the Court held an evidentiary hearing. Plaintiff testified under oath that he had requested compensatory education but had been denied it. He described his reasons for leaving the Shrine School, including harassment from school staff as a result of bringing the personal injury suit, witnessing the harassment and assault of other disabled students, and generally not feeling safe and comfortable in the school environment.

Plaintiff admitted that he had received a special education diploma and testified that he would like further assistance with reading, math, and computer skills. He receives instruction once per week at the Mid–South Assistive Technology Center but is willing and able to take a variety of courses more frequently. He testified that he is not enrolled in more courses currently due to funding. He maintains his request for the relief in his post-hearing brief.

## II. Mootness Standard

The federal courts are courts of limited jurisdiction, their powers circumscribed at their most basic level by the terms of Article III of the Constitution, which states that they may hear only "Cases" or "Controversies." U.S. Const. art. III, § 2, cl. 1. Although the case or controversy requirement has itself been a fertile ground for disagreement through the years, at its indisputable core lies the principle that, at all times, the dispute before the court must be real and live, not feigned, academic, or conjectural.

The requisite dispute must persist throughout the litigation—in a case such as this, from first filing in the district court through its many ascents and descents of the appellate ladder—and if the

dispute should dissolve at any time due to a change in circumstances, the case becomes moot. *See DeFunis v. Odegaard*, 416 U.S. 312, 316–17, 94 S.Ct. 1704, 40 L.Ed.2d 164 (1974) (per curiam); *Fox v. Bd. of Trustees*, 42 F.3d 135, 139–40 & n. 2 (2d Cir.1994). Whenever mootness occurs, the court, trial or appellate, loses jurisdiction over the suit and therefore must dismiss the case. *See, e.g., Fox*, 42 F.3d at 140.

## III. Discussion

### A. Capable of Repetition, But Evading Review

The Supreme Court has recognized an exception to the mootness doctrine where the dispute is "capable of repetition, yet evading review." *S. Pac. Terminal Co. v. ICC*, 219 U.S. 498, 515, 31 S.Ct. 279, 55 L.Ed. 310 (1911). The capable-of-repetition principle applies only "where the following two circumstances are simultaneously present: (1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again." *Spencer v. Kemna*, 523 U.S. 1, 17, 118 S.Ct. 978, 140 L.Ed.2d 43 (1998) (citations omitted). A recurrent dispute will evade review if it could not be entirely litigated before again becoming moot, including prosecution of appeals as far as the Supreme Court. *See, e.g., Honig v. Doe*, 484 U.S. 305, 322–23, 108 S.Ct. 592, 98 L.Ed.2d 686 (1988) (noting the likely mooting "by the time review can be had in this Court" of any future lawsuit brought by plaintiff). Given these strictures, it has been said that the exception "applies only in exceptional situations," *Spencer*, 523 U.S. at 17, 118 S.Ct. 978, and is "severely circumscribed," *Knaust*

*v. City of Kingston,* 157 F.3d 86, 88 (2d Cir.1998).

Defendant argues that Plaintiff has graduated and left Memphis public schools, therefore disclaiming Memphis School System's responsibility of providing a FAPE to Adam.[1] Defendant relies heavily on *Russman v. Board of Education,* 260 F.3d 114 (2d Cir.2001). *Russman* involved the IDEA claims of Colleen, a developmentally disabled student with severe mental limitations. *Id.* Colleen's parents, suing on her behalf, challenged a school district's refusal to fund on-site special education services at a private parochial school. *Id.* In affirming the district court's grant of summary judgment to the school district, the *Russman* Court held that any appeal was rendered moot by the fact that Colleen had received a special education diploma and withdrawn from school without any intent of re-enrolling in public or private school. *Id.* at 119. Without an intent to re-enroll, the Court found that a favorable decision would not "immediately inure to her benefit," rendering the case moot. *Id.* at 119. Accordingly, the Court found that *Russman* was an inappropriate case for application of the "capable of repetition, but evading review" exception to mootness. *Id.* at 121.[2]

Adam's situation is distinguishable from Colleen's on two accounts. First, Adam left as a result of Defendant's behavior, while Colleen left the school district on her own accord. At the November 20, 2003 hearing, Adam testified that he was harassed at school for pursuing his personal injury case in state court and reaching a settlement with Memphis School System. He also testified to the harassment and assault of other disabled students in his presence. Therefore, Adam's uncomfortable and unsafe atmosphere at the Shrine School stands inapposite to the school environment of Colleen in *Russman.* Secondly, Adam's situation is different than Colleen's because he is currently enrolled in an educational program and requests more educational services from the Memphis School System. Adam testified that he currently receives instruction once a week at the Mid–South Technology Access Center. He stated that he is capable of receiving more instruction, but he lacks the funding to receive more instruction. He expressed a desire to get more training in order to work for his cousin's internet business. Plaintiff also testified that he still wants the relief requested in his post-hearing brief, including occupational therapy, specialized tutoring in math and reading, and training at the Mid–South Technology Access Center.

The Court applies the aforementioned standard of the U.S. Supreme Court applies when investigating whether Plaintiff's situation warrants application of the "capable of repetition, but evading review" exception to the mootness doctrine. While the challenged action might be too short to be fully litigated prior to cessation or expiration, there is not a reasonable expectation that the same complaining party will be subject to the same action again.

---

1. The receipt of a special education diploma does not moot Adam's case. *Barnett,* 50 Fed. Appx. at 220. Memphis School System has an obligation to provide Adam a FAPE until he receives a *regular* high school diploma, regardless of any other special graduation. 34 C.F.R. § 300.122(a)(3)(ii).

2. In holding that *Russman* was not an appropriate application of the "capable of repetition, but evading review" exception, the Court noted that Colleen left her school district on her own accord and not as a result of the school district's conduct. *Id.* at 121 ("We have no reason to believe that Colleen's withdrawal had anything to do with the defendant's conduct. Rather, the record suggests that Colleen withdrew because she had reached the anticipated end of her schooling. . . .")

Plaintiff might be able to prove the first prong, but at age twenty-four, he would not be able to show the second prong, that he could be subject to the denial of a FAPE again. Memphis School System does not owe Adam a FAPE at age twenty-four. *See* 34 C.F.R. § 300.121 (requiring each state to effect a policy that ensures that "all children with disabilities aged 3 through 21" have the right to FAPE). Plaintiff's claims do not survive the mootness doctrine through the narrow exception of "capable of repetition, but evading review."

### B. Compensatory Education

▋ Plaintiff requests compensatory education, which is doctrinally different than the requests of Colleen in *Russman.* Adam claims that Memphis School System must pay for educational services because it illegally denied him a FAPE when he was under the age of twenty-one. Compensatory education is a judicially constructed form of relief designed to remedy past educational failings for students who are no longer enrolled in public school due to their age or graduation. *Pihl v. Massachusetts Dept. of Educ.*, 9 F.3d 184, 189 (1st Cir.1993). Plaintiff requests the Court to investigate past violations and compensate with educational services the denial of FAPE. A proper request for compensatory education presents no issue of mootness, since the reviewing court investigates past violations rather than predicting the likelihood of future violations.

▋ Relief in the form of compensatory education is the logical extension of the United States Supreme Court's decision in *School Committee of the Town of Burlington v. Department of Education*, 471 U.S. 359, 105 S.Ct. 1996, 85 L.Ed.2d 385 (1985). *See* 68 Am.Jur.2d Schools § 353. In *Burlington*, the Supreme Court held that a school district must reimburse parents for private placement of a student with special education needs if a court determines that the private setting provided an appropriate education and the proposed IEP did not. *Burlington*, 471 U.S. at 369, 105 S.Ct. 1996. After *Burlington*, parents in disagreement with a proposed IEP could place their children in private settings and later be reimbursed for tuition for any services that were appropriate. *Id.* Once the private setting was established as appropriate, the school district was required to integrate the private setting into the IEP and pay any future tuition. *Id.* at 370, 105 S.Ct. 1996.

In the wake of the decision, parents of disabled students with financial means could gamble on private education with the hope of reimbursement. Families without financial freedom did not have the option of private education, since the Court did not order that the school pay tuition before the setting was established as either appropriate or not. *See Burlington*, 471 U.S. at 369, 105 S.Ct. 1996. Therefore, families without adequate finances had no option aside from the proposed, and allegedly inappropriate, IEP.

Courts of Appeals later extended the Court's reasoning in *Burlington* to award "compensatory education." School districts were ordered to provide education to a disabled child past his or her twenty-first birthday to make up for any earlier deprivation of an appropriate education. *See, e.g., Pihl*, 9 F.3d at 189; *M. C. v. Cent. Reg'l Sch. Dist.*, 81 F.3d 389, 395 (3d Cir. 1996), *cert. denied*, 519 U.S. 866, 117 S.Ct. 176, 136 L.Ed.2d 116 (1996); *Hall v. Knott County Bd. of Educ.*, 941 F.2d 402, 407 (6th Cir.1991); *Bd. of Educ. of Oak Park v. Ill. State Bd. of Educ.*, 79 F.3d 654, 660 (7th Cir.1996); *Miener v. Missouri*, 800 F.2d 749, 753 (8th Cir.1986). In facts similar to the instant case, a court in Indiana held a special education student's claims not moot, though he was twenty-four years

old at the time of the review, because he sought compensation for past rights violations, not an injunction governing future conduct. *See Brett v. Goshen Cmty. Sch. Corp.*, 161 F.Supp.2d 930, 941 (N.D.Ind. 2001).

The courts adopting this remedy did so because the IDEA's requirement of a free appropriate education should not turn on the parent's ability to pay for it and then seek reimbursement from the public school. *See Miener*, 800 F.2d at 753.

> Like the retroactive reimbursement in *Burlington*, imposing liability for compensatory educational services on the defendants merely requires [them] to belatedly pay expenses that [they] should have paid all along, Here, as in *Burlington*, recovery is necessary to secure the child's right to a free appropriate public education. We are confident that Congress did not intend the child's entitlement to a *free* education to turn upon her parent's ability to 'front' its costs.

*Id.* at 753 (citations omitted) (emphasis in original); *see also Hall*, 941 F.2d at 407 (same).

Therefore, Plaintiff's claims for compensatory education are not mooted because he no longer wishes to enroll in a Memphis public school. The Sixth Circuit held that a student's removal from state public schools on his own initiative did not moot his IDEA claims. *See Kuszewski v. Chippewa Valley Sch. Dist.*, 56 Fed.Appx. 655, 658 (6th Cir.2003). The *Kuszewski* Court stated, "unilateral removal does not foreclose the possibility of recovery for private educational costs, as well as the attorneys' fees incurred in attempting to so recover." *Id.*

In his post-hearing brief, Adam requests two years of compensatory education and accompanying services, including: occupational therapy; physical therapy; assistive technology services; and math and reading tutoring specifically tailored to his math and reading disorders. These demands seem both specific and feasible. As the Court stated in *Honig*, "Appellant asked for specific relief in his complaint, and he has asked for specific relief on appeal ... Furthermore, at this time, Appellant is still able to reap the benefits of the IDEA, as it applies to students between the ages of 3 and 21." *Doe*, 149 F.3d 1182. Since Adam testifies that he is owed federally mandated educational services that were never provided by Memphis School System while he was under the age of 21, his claims are not moot.

## IV.  Conclusion

Upon review of the entire record, testimony of the Plaintiff, and argument of the parties, the Court concludes that Plaintiff's removal from Memphis School System does not moot this case. As per order of the Sixth Circuit, the instant case was remanded on the sole issue of mootness. Therefore, the case is hereby returned to the Court of Appeals for the Sixth Circuit for further proceedings.